35 F.3d 555
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Anthony R. CLEMONS, Plaintiff-Appellant,
v.
EAST CAROLINA UNIVERSITY, Defendant-Appellee.
 No. 94-1366.
 United States Court of Appeals, Fourth Circuit.
 Sept. 9, 1994.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at New Bern. James C. Fox, Chief District Judge. (CA-93-58-4-F).
 Robert Lee White, Greenville, North Carolina, for appellant.
 Anne Johnson Brown, Assistant Attorney General, Thomas J. Ziko, Special Deputy Attorney General, North Carolina Department of Justice, Raleigh, NC, for appellee.
 Michael F. Easley, Attorney General of NC, North Carolina Department of Justice, Raleigh, NC, for appellee.
 E.D.N.C.
 AFFIRMED.
 Before RUSSELL, WIDENER and HALL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Plaintiff Anthony Clemons, a black male, appeals the district court's dismissal on summary judgment of his Title VII claim, which alleged that the promotion by his employer, East Carolina University (the University), of William Stallings, a white male, instead of him was racially motivated.
 
 
 2
 The record reveals that Clemons and Stallings were employed at the University in the position of Mechanic II. Their supervisor was Thurman Stox, who held the position of Mechanic Supervisor I. He, in turn, was supervised by Gene Howell, the University's Plant Maintenance Supervisor.
 
 
 3
 In December, 1988, Howell learned that Stox intended to retire in January, 1989, and contacted Richard Farris, the University's personnel director. Stox's retirement posed a problem because during this period the State of North Carolina had imposed a hiring freeze on all state agencies, including the University; Farris feared that, in connection with the freeze, the position of Mechanic Supervisor I may be eliminated after Stox's retirement. In order to prevent the elimination of Stox's position, Farris instructed Howell to fill the position as quickly as possible, even if that meant not following the standard hiring procedures, which would have required advertising the vacancy.
 
 
 4
 Acting in accordance with these instructions, Howell sought to fill Stox's position by relying on the recommendation of Stox. Stox recommended Stallings after considering all the mechanics he supervised, including Clemons. Stox indicated that Stallings possessed the best background and training in advanced automotive mechanics, specifically in diagnosing and repairing engine malfunctions, which was the core of mechanic shop's duties. In addition, Stox was impressed with Stallings' pursuit of training and course work outside of the requirements of his job, which Stox believed both showed a good attitude and improved his ability to handle the administrative duties of the Maintenance Supervisor I position.
 
 
 5
 Stox found Clemons less qualified for the Maintenance Supervisor I position than Stallings. He pointed out that Clemons was skilled primarily in small engine repair and general automotive maintenance, areas not central to the duties of the mechanic shop; he was less skilled than Stallings in advanced auto mechanics. In addition, Stox indicated, Clemons had not shown Stallings' desire to pursue outside training and course work; in fact, Clemons had declined Stox's suggestions that he take various courses.
 
 
 6
 Howell accepted Stox's recommendation and recommended to Farris that Farris promote Stallings. Acting on Howell's recommendation, Farris promoted Stallings to the position of Maintenance Supervisor I.
 
 
 7
 Clemons points to no evidence that racial bias affected in any way the University's decision to promote Stallings to Maintenance Supervisor I; to the contrary, in fact, the record shows that Stallings was promoted instead of Clemons because their supervisor found Stallings better qualified for the Maintenance Supervisor I position. We therefore agree with the district court's determination that Clemons could not prevail on his Title VII claim, and we affirm the district court's grant of summary judgment for the University.
 
 
 8
 AFFIRMED.